

# NUMBER 13-26-00479-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

CLAUDIA BETH VELA,                                         **Appellant.**

### v.

ELIZA CASTILLO,                                             **Appellee.**

---

## ON APPEAL FROM THE 105TH DISTRICT COURT
## OF KENEDY COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Cron**
**Memorandum Opinion by Justice Silva**

Appellant Claudia Beth Vela appeals the trial court's judgment reversing the election results and declaring appellee Eliza Castillo the winner of the March 3, 2026 Democratic primary election for Justice of the Peace, Precinct 2 of Kenedy County, Texas. By three issues, which we renumber, Vela argues the trial court abused its discretion by (1) failing to consider that two votes were previously "determined to be illegal

votes" by this Court[1]; (2) finding three voters were residents of Kleberg County; and (3) finding a disqualified voter had voted for Vela. We affirm.

## I.  BACKGROUND

In a municipal election held on March 3, 2026, Vela was elected as the Democratic nominee for Justice of the Peace, Precinct 2 of Kenedy County. Vela defeated Castillo by three votes, with a total of 30 votes cast for Vela, and 27 votes cast for Castillo.

On March 27, 2026, Castillo filed her original petition contesting the election results, asserting that several votes were illegally cast in violation of the Texas Election Code. Specifically, Castillo alleged that votes were illegally cast by voters "who were registered to vote at an address not a residence or not their residence" and by voters who were not residents of Kenedy County. Castillo also alleged that several votes cast via mail-in ballots were illegal "due to numerous violations of various requirements" for mail-in ballots. Castillo asserted that "[b]ecause the number of illegal votes cast exceeds the difference in the total votes cast for [Castillo] and those cast for [Vela], the Court cannot ascertain the true outcome of the election and . . . must declare the election void and order a new election." In the alternative, Castillo requested the trial court to declare her the winner of the election.

On April 21, 2026, Vela filed her original answer generally denying Castillo's claims and asserting special exceptions.[2] A bench trial commenced on June 8, 2026, and the following evidence was adduced.

---

[1] *See Miller v. Vela*, No. 13-26-00347-CV, 2026 WL 1552127, at *12 (Tex. App.—Corpus Christi–Edinburg June 1, 2026, no pet.) (mem. op.).

[2] The trial court did not rule on Vela's special exceptions.

2

Stephanie Garza, elections administrator for Kenedy County, testified that "Vela had a total of 30 votes and [Castillo] had 27" votes. Among other things, Garza identified certain documents pertaining to several voters as "election day combination form[s]," which were admitted into evidence. These documents indicated that Michael Acevedo, Derek Davis, and Makinna Tucker all voted in the Democratic primary election in Precinct 2 held on March 3, 2026. These same documents also indicated that Felicita Serna, Felix Erasmo Serna, and Della Rose Serna (collectively referred to as the Sernas) also voted in said election.

Garza verified that Acevedo voted in Precinct 2 in the election at issue but that he resided in Precinct 3 at the time he voted. The following colloquy occurred:

| | |
|---|---|
| [Castillo's counsel]: | Okay. And were you aware whether or not [Acevedo] had voted in the election for . . . county commissioner Precinct[ ]2 or justice of the peace Precinct[ ]2? |
| [Garza]: | Yes, I am aware he vote[d]. |
| [Castillo's counsel]: | And do you remember what precinct he voted in? |
| [Garza]: | He voted in Precinct[ ]2. |
| . . . . | |
| [Castillo's counsel]: | And so basically he did not vote in the precinct where he lived— |
| [Garza]: | Correct. |
| [Castillo's counsel]: | —or reside[,] is that correct? |
| [Garza]: | Correct. |

Garza also testified that Davis voted in the election but that he no longer lived in

3

Precinct 2 when he voted. Similarly, Garza confirmed Tucker, Davis's spouse, voted in Precinct 2 but also did not reside in that precinct when she voted. Garza additionally confirmed the Sernas all had the same address of "446 La Paloma Ranch Road, Sarita, Texas" based on the relevant election day combination form. On cross-examination, Garza testified that the Sernas' Sarita address was located in Precinct 2 and that they all voted in that precinct.

Felicita testified she "live[d] at La Paloma Ranch" on "Highway 285 West." When asked what her address was, she replied, "P.O. Box 331, Riviera, Texas." She further testified her spouse is Felix and she taught at the Riviera Independent School District (RISD) for thirty-eight years. Various exhibits concerning Felicita's employment with RISD were introduced into evidence including: a business records affidavit; an employee acknowledgment form; an employee emergency contact form; an employment application; a retirement letter; and her salary information. When asked about the RISD documents, she confirmed she listed her Riviera addresses in the documents and that none of the documents listed a Kenedy County address. The following colloquy occurred:

| [Castillo's counsel]: | So you are originally from Riviera? |
| --- | --- |
| [Felicita]: | From Riviera, yes. |
| [Castillo's counsel]: | Okay. And you said you live at La Paloma Ranch? |
| [Felicita]: | Yes. |
| [Castillo's counsel]: | However, that's not where you sleep at night, right? |
| [Felicita]: | I sleep there. It's my home for 42 years. |
| [Castillo's counsel]: | Okay. Who owns that property? |

4

| | |
|---|---|
| [Felicita]: | Lee Bass. |
| [Castillo's counsel]: | You don't own it, right? |
| [Felicita]: | No. My husband has worked for that ranch. |
| [Castillo's counsel]: | And that's a ranch house that exists— |
| [Felicita]: | Yeah. |
| [Castillo's counsel]: | —at La Paloma Ranch Road, right? |
| [Felicita]: | Yes. Yes. |
| [Castillo's counsel]: | Right. And it has a small house there, right? |
| [Felicita]: | Well, it has three bedrooms. It's a big home. |

Regarding the ranch house, she testified she had never rented from Bass nor did she have a lease with him.

A screenshot of Felicita's Facebook page was also introduced into evidence during her testimony. She testified she created the page but had not "updated it or anything." Castillo's counsel pointed out that her page showed that she lived in Riviera and stated, "It doesn't say anything about La Paloma Ranch Road, right?" and Felicita responded by stating, "No, sir, it doesn't say anything about La Paloma [Ranch]." She further testified about a home located in Riviera that she and Felix bought in 2015. Felicita stated it was "a good[-]sized home" on around eleven acres of land with three bedrooms and two bathrooms. She testified they have cattle on the land; they, the Sernas, sleep there on the weekends; and that they were paying a mortgage and taxes on their Riviera property. Castillo's counsel also questioned Felicita concerning her vehicle registration, which was also admitted into evidence. She confirmed she owned the vehicle and that it was

5

registered in Riviera.

Castillo's counsel subsequently admitted into evidence appraisal district records pertaining to Felicita's property in Riviera as well as the ranch house. The records showed the ranch house had a living area of 840 square-feet and a value of $32,710 and that the Riviera home's living area was 2,000 square-feet and valued at $265,910. On cross-examination, Felicita stated, "I live in Kenedy County. I sleep in Kenedy County. And . . . the reason everything says Riviera, Texas, is because I have a post office box, P.O. Box 331, Riviera, Texas." She further testified she "would have to drive like 28 miles or 18 miles to come to this post office" but that her "post office box has been in Riviera, because it's easier for [her] from school, [to] stop at the post office and go . . . 13 miles to La Paloma [Ranch]." Felicita reiterated she has lived at the ranch house forty-two years and testified she has been voting in Kenedy County "since she moved" there. She confirmed that she voted in the Democratic primary election for Justice of the Peace, Precinct 2 in Kenedy County. Felicita testified that "everything [she owns] is there at that house at La Paloma [Ranch]." She clarified that the "the house is situated south of the creek, which is [in] Kenedy County." Following her testimony, the trial court found that Felicita lived in Kleberg County, and that her vote was disqualified. Thereafter, the trial court asked Felicita who she voted for and she replied, "Claudia Vela."

Felix testified his address was "P.O. Box 331 Riviera, but [he lived] at La Paloma Ranch." He explained he was "part of the board of directors" at the ranch and had worked there for forty-three years. Felix confirmed he voted in the Democratic primary election for Justice of the Peace, Precinct 2 in Kenedy County. He testified he had been married to Felicita for forty-four years and they had never lived in separate locations. Felix further

6

confirmed that he owned property and a home in Riviera; that the home was 2,000 square feet valued at around $205,710; that he paid taxes to Kleberg County and Riviera; and that he purchased the property in 2015. However, Felix testified that they, the Sernas, only stay at the Riviera home occasionally. Regarding the ranch house as previously discussed during Felicita's testimony, Felix stated, "I don't own it. I live there." The following exchange occurred:

| | |
|---|---|
| [Castillo's counsel]: | And that house is owned by [Bass,] is that right? |
| [Felix]: | Yes, sir. |
| [Castillo's counsel]: | And he owns all that property as well[,] is that right? |
| [Felix]: | Yes, sir. |
| [Castillo's counsel]: | And . . . you don't have a lease to that property, right? |
| [Felix]: | No. |
| [Castillo's counsel]: | You don't . . . rent it? |
| [Felix]: | No, sir. |
| [Castillo's counsel]: | You don't pay any taxes on that [property]? |
| [Felix]: | No, sir. |

Later, when asked whether he or Felicita owned any property outside of Riviera with a home on it, Felix responded, "No, sir." On cross-examination, Felix testified he had "an office . . . , living room, kitchen, washing machine, dryer, TV, [and] two bedrooms" at the ranch house. He further testified he lived at the La Paloma Ranch around ninety-percent of the time and only spent time at the Riviera house on the weekends. After considering his testimony, the trial court found that Felix resided in Kleberg County and that his vote

7

was disqualified. Subsequently, when asked by the trial court who he voted for, Felix stated, "Ms. Vela."

Della testified she is the daughter of Felix and Felicita and has lived with her parents at the La Paloma Ranch in Sarita all her life except while attending undergraduate and graduate school. She explained she worked for the La Paloma Ranch as a "marketing specialist in the registered livestock operations department." Della confirmed she voted in the Democratic primary election for Justice of the Peace, Precinct 2 in Kenedy County. She further testified she owned the Riviera home with her parents and they "bought it as an investment property." Della confirmed that the ranch house was located in Kenedy County and that both she and Felix had an office at that house. On cross-examination, Della reiterated she lived "in Kenedy County on La Paloma Ranch" with her parents. Regarding the Riviera property, she testified the Sernas ran "about 11 head of cross bred Santa Gertrudis cattle[, including] eleven mature cows and . . . five calves." Della testified they "really only go to Riviera on weekends . . . if [they] can." Following her testimony, the trial court found that Della resided in Kleberg County and that her vote was disqualified. When asked by the trial court who she voted for, Della testified, "Ms. Vela."

Davis testified he was renting a house with Tucker located at 368 North Tony De La Rosa in Sarita until they were evicted in 2025 on Christmas Day. He further testified he never returned to that house after his eviction. Davis confirmed he voted in the March 2026 Democratic primary election. On cross-examination, Davis testified he did not reside in Precinct 2 at the time he voted but was residing in a hotel in Harlingen. He further testified on re-cross that after his eviction on Christmas Day, he lived in a trailer located in Precinct 3 until it was destroyed by a fire. After considering his testimony, the trial court

8

found that Davis "was not a resident of Precinct 2 when he voted" and that his vote was disqualified. When asked by the trial court who he voted for, Davis responded, "Your Honor, I really can't remember. I think I voted for the Vela [sic]." Davis also testified that "[Tucker] would have done the same."

Melinda Vela testified that she is Vela's mother and that she lived across the street from Maria Elena Urbina. Melinda confirmed that she testified in a prior election contest lawsuit that she assisted Urbina by mailing Urbina's ballot. She further testified that she was not aware she was required to sign the ballot under Texas law just by mailing it. A copy of Urbina's ballot envelope previously admitted into evidence during Garza's testimony was separately admitted as Vela's Exhibit 35. The following exchange ensued:

| [Castillo's counsel]: | Now, what [Urbina] did was she voted the ballot, right? |
|---|---|
| [Melinda]: | I guess. |
| [Castillo's counsel]: | And she handed you the ballot to mail it for her, right? |
| [Melinda]: | She handed me the envelope. |
| [Castillo's counsel]: | Right. And you took the envelope, put a stamp on it and mailed it? |
| [Melinda]: | Correct. |
| [Castillo's counsel]: | You took it to the post office? |
| [Melinda]: | Exactly. That's where you mail it to the post office. |
| [Castillo's counsel]: | That's the way you did it, right? |
| [Melinda] | Yes. |
| [Castillo's counsel]: | And on [Vela's Exhibit] 35 is there anywhere in |

9

|  |  |
|---|---|
|  | the document, which is the envelope on the ballot, where you signed assisting [Urbina]? |
| [Melinda]: | No, because I did not assist her. I just mailed [it]. |
| [Castillo's counsel]: | You . . . testified you took her ballot, right? |
| [Melinda]: | Took the envelope with her, whatever she had in there. |
| [Castillo's counsel]: | Right. And you took it to the post office? |
| [Melinda]: | Correct. |
| [Castillo's counsel]: | And you put a stamp on it, right? |
| [Melinda]: | Correct. |
| [Castillo's counsel]: | But you did not sign the ballot? |
|  | . . . . |
| [Melinda]: | No, I did not. |

On cross-examination, Melinda explained she did not sign Urbina's ballot because she "did not assist her. [She] just . . . [brought] the ballot to mail it at the post office." She further testified, "I don't consider that assisting her." After Melinda testified, the trial court concluded that "by taking the envelope, putting a stamp on it and taking it to the post office, that's assisting the voter," and disqualified Urbina's vote.

Thereafter, Castillo's counsel stated, "We've been able to prove the violation of the Election Code without [Urbina's] testimony. So the only issue that remains is who did [Urbina] vote for." Castillo's counsel then stated that it did not believe a certified interpreter was necessary to ask Urbina who she voted for. Later, the trial court asked Vela's counsel if it had any objection to having "the interpreter, if we find one shortly, to perform that service by phone." Vela objected, stating that no motion was filed "to have anyone appear

10

via zoom or by phone," which was overruled by the trial court. Thereafter, Urbina, with the assistance of a Spanish-speaking interpreter by phone, testified she voted for Vela.

After Urbina testified, the parties rested and provided closing arguments. The trial court then declared Castillo as the winner of the election based on the number of disqualified votes. The trial court signed its final judgment on June 9, 2026, holding that the "official canvas and certification showed that [Vela] received 30 votes and that [Castillo] received 27 votes. After the 5 disqualified votes for [Vela] are subtracted, [Vela] is left with 25 votes. Since no votes for [Castillo] were challenged, her votes remain at 27, 2 more votes than [Vela]." It ultimately ordered that Castillo "is hereby DECLARED the Winner of the March 3, 2026 Kenedy County Justice of the Peace, Precinct 2 Democratic Primary Election."

On June 15, 2026, Vela requested findings of fact and conclusions of law. On June 18, 2026, the trial court signed its findings of fact and conclusions of law in support of its judgment. The court found that Vela received 30 votes and Castillo received 27 votes. It also found that "[Vela] was declared the winner because she received 3 more votes than [Castillo]." The court further found that the Sernas each voted for Vela in the March 2026 Democratic primary election in Kenedy County. As to Davis, the trial court found he voted for Vela in the March 2026 Democratic primary election in Kenedy County. The court concluded the Sernas were all residents of Kleberg County and were not eligible to vote in Kenedy County. Similarly, the trial court concluded Davis was a resident of Precinct 3 at the time he voted in Precinct 2 and was not eligible to vote in that precinct in Kenedy County. Further, the trial court concluded Melinda assisted Urbina in casting her mail-in ballot because she failed to sign the required form attesting that she assisted Urbina.

11

Consequently, the trial court concluded all five of these votes were disqualified and must be subtracted from the 30 votes Vela received, resulting in 25 votes for Vela. Finally, the court concluded that none of Castillo's 27 votes were contested and thus declared Castillo to be the true winner of the March 3, 2026 Democratic primary election for Justice of the Peace, Precinct 2 of Kenedy County. This appeal ensued.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

"The purpose of an election contest is to determine whether the outcome of an election is correct." *Rodriguez v. Rangel*, 679 S.W.3d 890, 903 (Tex. App.—San Antonio 2023, pet. denied) (quoting *Flores v. Cuellar*, 269 S.W.3d 657, 660 (Tex. App.—San Antonio 2008, no pet.)); TEX. ELEC. CODE § 221.003(a). "To overturn an election, the contestant must prove by clear and convincing evidence that voting irregularities materially affected the election results." *Rodriguez*, 679 S.W.3d at 903 (quoting *Flores*, 269 S.W.3d at 660). "A contestant can establish the outcome was materially affected by showing: (1) illegal votes were counted or an election official failed to count legal votes or engaged in other fraud, illegal conduct, or mistake; and (2) a different result would have been reached." *Id.* (quoting *Galvan v. Vera*, No. 04-18-00309-CV, 2018 WL 4096383, at *2 (Tex. App.—San Antonio Aug. 29, 2018, no pet.) (mem. op.)); *see* TEX. ELEC. CODE §§ 221.003(a), 221.011. "'[I]llegal vote' means a vote that is not legally countable." TEX. ELEC. CODE § 221.003(b).

"If the trial court can determine the candidate for whom an illegal vote was cast, it must subtract that vote from the candidate's official total." *Medlin v. King*, 705 S.W.3d 267, 280 (Tex. App.—El Paso 2024, pet. denied) (citing TEX. ELEC. CODE § 221.011). "And if the trial court can determine the true outcome of the election after following this

12

procedure, it must declare the outcome." *Id.* (citing *Slusher v. Streater*, 896 S.W.2d 239, 241 (Tex. App.—Houston [1st Dist.] 1995, no writ)); Tᴇx. Eʟᴇᴄ. Cᴏᴅᴇ § 221.012(a). "If it cannot, however, it must declare the election void." *Medlin*, 705 S.W.3d at 280 (citing *Slusher*, 896 S.W.2d at 241); Tᴇx. Eʟᴇᴄ. Cᴏᴅᴇ § 221.012(b); *see also* Tᴇx. Eʟᴇᴄ. Cᴏᴅᴇ § 221.009(b) ("If the number of illegal votes is equal to or greater than the number of votes necessary to change the outcome of an election, the tribunal may declare the election void without attempting to determine how individual voters voted."). "An election contestant's burden is a heavy one, and the declared results [of an election] will be upheld in all cases except when there is clear and convincing evidence of an erroneous result." *Medlin*, 705 S.W.3d at 292 (quoting *Flores*, 269 S.W.3d at 660).

"We review a trial court's judgment in an election contest for an abuse of discretion." *Rodriguez*, 679 S.W.3d at 903 (citing *Flores*, 269 S.W.3d at 660). A trial court abuses its discretion when it acts without reference to guiding rules or principles or in an arbitrary or unreasonable manner. *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam). "In determining whether the trial court abused its discretion, we may consider the sufficiency of the evidence supporting its findings of fact." *Rodriguez*, 679 S.W.3d at 903 (citing *Jones v. Morales*, 318 S.W.3d 419, 423 (Tex. App.—Amarillo 2010, pet. denied)).

When an appellant challenges the legal sufficiency of an adverse finding on which she did not have the burden of proof at trial, as Vela does here, she must demonstrate on appeal that there is no evidence to support the adverse finding. *See Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). "We will sustain a legal sufficiency challenge if 'the evidence offered to prove a vital fact is no more than a

scintilla.'" *Id.* (quoting *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009)). "In considering a legal sufficiency challenge under a clear and convincing standard, we view the evidence in the light most favorable to the judgment to determine if the [factfinder] could have reasonably formed a firm belief or conviction that the finding was true." *Medlin*, 705 S.W.3d at 292 (citing *Jones*, 318 S.W.3d at 423). "We presume the [factfinder] resolved disputed facts in favor of its findings so long as a reasonable [factfinder] could do so, and we disregard any contrary evidence if a reasonable [factfinder] could do so." *Id.*

"When reviewing a factual sufficiency challenge, we 'must consider and weigh all of the evidence,' not just the evidence that supports the factfinder's finding." *Gonzalez v. Sanchez*, 717 S.W.3d 516, 527 (Tex. App.—Eastland 2025, no pet.) (quoting *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998)). "We must review the evidence in a neutral light." *Id.* (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001)). "If we set aside a judgment on the basis that a vital finding is not supported by factually sufficient evidence, we must detail the evidence that is relevant to the issue and specify how the contrary evidence greatly outweighs the evidence that supports the finding." *Id.* (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)). When a party challenges the factual sufficiency of the evidence supporting a finding on an issue for which it did not have the burden of proof at trial, like Vela does here, "we will set aside the finding only if the evidence in support of the finding is so weak or contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust." *Id.* (first citing *Pool*, 715 S.W.2d at 635; and then citing *Cowan v. Worrell*, 638 S.W.3d 244, 253 (Tex. App.—Eastland 2022, no pet.)).

14

Even when a clear and convincing evidence standard applies, "[a] court of appeals must nevertheless still provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)); *see also N. E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 255 n.50 (Tex. 2020) ("Under any standard of review, the [factfinder] is the sole judge of the credibility of witnesses and the weight to give their testimony." (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005))). The factfinder "may choose to believe one witness and disbelieve another." *Wilson*, 168 S.W.3d at 819. "Reviewing courts cannot impose their own opinions to the contrary." *Id.* But the factfinder is "not free to believe testimony that is conclusively negated by undisputed facts," or "ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *Id.* at 820.

We review conclusions of law de novo. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020). A party may not challenge conclusions of law for factual sufficiency, but we may review conclusions of law to determine their correctness based upon the facts. *Citizens Nat'l Bank v. City of Rhome*, 201 S.W.3d 254, 256 (Tex. App.—Fort Worth 2006, no pet.). We will uphold a conclusion of law if the judgment can be supported on any legal theory supported by the evidence. *Tex. Dep't of Pub. Safety v. Stockton*, 53 S.W.3d 421, 423 (Tex. App.—San Antonio 2001, pet. denied). We will not reverse a conclusion of law unless it is erroneous as a matter of law. *Id.* If a trial court's conclusion of law is erroneous but the court rendered the proper judgment, the erroneous conclusion

15

does not require reversal. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "[F]indings of fact and the conclusions of law will be construed together; and if the findings of fact are susceptible of different constructions, they will be construed, if possible, to be in harmony with the judgment and to support it." *Tex. Outfitters Ltd. v. Nicholson*, 534 S.W.3d 65, 74 (Tex. App.—San Antonio 2017) (quoting *Gulf Liquid Fertilizer Co. v. Titus*, 163 Tex. 260, 270, 354 S.W.2d 378, 385 (1962)), *aff'd*, 572 S.W.3d 647 (Tex. 2019).

To be eligible to vote in Texas, a person must "be a resident of the territory covered by the election for the office or measure on which the person desires to vote." TEX. ELEC. CODE § 11.001(a)(2). Residency as the term is used in the Texas Election Code is a determination involving multiple considerations, including an individual's circumstances and intent. *Medlin*, 705 S.W.3d at 291–92. The election code defines "residence" as "domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence." TEX. ELEC. CODE § 1.015(a). A person "does not lose the person's residence by leaving the person's home to go to another place for temporary purposes only," *id.* § 1.015(c), and "does not acquire a residence in a place to which the person has come for temporary purposes only and without the intention of making that place the person's home." *Id.* § 1.015(d).

But if a person makes statements about their residence "that are inconsistent with the facts showing actual residence, such statements 'are of slight weight' and cannot establish residence in fact." *In re Graham*, 251 S.W.3d 844, 850 (Tex. App.—Austin 2008, orig. proceeding) (quoting *Texas v. Florida*, 306 U.S. 398, 425 (1939)). However, the election code prohibits a person from "establish[ing] residence for the purpose of

16

influencing the outcome of a certain election." TEX. ELEC. CODE § 1.015(b). It also provides that "[a] person may not designate a previous residence as a home and fixed place of habitation unless the person inhabits the place at the time of designation and intends to remain." *Id.* § 1.015(f).

### III.  ANALYSIS

### A.  Tucker's and Acevedo's Votes

We first address Vela's contention that the trial court "failed to consider the decision made in the instant court by the same panel of Justices" concerning the same Democratic primary election held on March 3, 2026, regarding the votes of Tucker and Acevedo. *See Miller v. Vela*, No. 13-26-00347-CV, 2026 WL 1552127, at *12 (Tex. App.—Corpus Christi–Edinburg June 1, 2026, no pet.) (mem. op.).[3] We construe her argument as challenging the trial court's failure to issue findings that these two voters cast illegal votes in the Justice of the Peace, Precinct 2 race. We conclude the trial court could have implicitly found that Tucker and Acevedo did not cast a vote in the specific race at issue.

Contrary to Vela's contention that "[t]his is the exact same territory covered in [that] election that is [the] subject of this appeal," the election contest case she cites concerned a candidate for County Commissioner in Precinct 2. *See id.* at *1. In support of her argument, Vela primarily relies on this Court's memorandum opinion discussing Tucker's and Acevedo's testimony regarding the County Commissioner election contest. *See id.* at *10–12. In the present case, Vela contends "Castillo conceded in her closing argument that [Tucker] was not qualified to vote in this election and . . . the trial court did not make

---

[3] Vela argues this point in part by attempting to convince this Court that if Tucker's and Acevedo's votes are found to be illegal and disqualified then "a new election [should] be ordered since the true outcome of this election can not [(sic)] be determined and [the] election must be declared void."

a determination as to how she voted." Similarly, Vela points out that "Castillo conceded in her closing argument that [Acevedo] voted in [the] wrong precinct."

We note that neither Tucker nor Acevedo testified at the bench trial and that no party sought to admit prior transcripts of those witnesses' testimony as evidence. While Garza did testify that Tucker and Acevedo had voted in the March 3, 2026 Democratic primary election, Vela has not directed us to any evidence in the record that they specifically voted for a Justice of the Peace, Precinct 2 candidate.

Garza confirmed Tucker voted in Precinct 2 but did not reside in that precinct when she voted. However, the trial court could not reasonably infer from Garza's testimony that Tucker cast a vote in the justice of the peace race subject to this appeal. *See Suarez v. City of Texas City*, 465 S.W.3d 623, 634–35 (Tex. 2015) ("An inference is not reasonable if [the evidence] is susceptible to multiple, equally probable inferences, requiring the factfinder to guess in order to reach a conclusion." (alteration in original)). Moreover, after Davis discussed who he voted for in the election at issue, he stated, "[Tucker] would have done the same." Nevertheless, the trial court was not required to credit any of Davis's testimony in Vela's favor. *See In re A.B.*, 437 S.W.3d at 503.

Similarly, it is not clear from Garza's testimony whether Acevedo cast a vote in the justice of the peace race at issue in this appeal. When asked if she was aware "whether or not [Acevedo] had voted in the election for" county commissioner or justice of the peace for Precinct 2, Garza responded, "Yes, I am aware he vote[d]." The trial court could not reasonably infer from Garza's answer that Acevedo voted in the justice of the peace race. *See Suarez*, 465 S.W.3d at 634. Nor can we glean from the record that no undervotes occurred during the primary election, which could have supported an inference that

18

Tucker and Acevedo voted for a justice of the peace candidate. "An undervote occurs when a voter casts a ballot but does not cast a vote in all races featured on the ballot." *Lunceford v. Craft*, No. 01-23-00921-CV, ___ S.W.3d ___, 2026 WL 280362, at *1 n.4 (Tex. App.—Houston [1st Dist.] 2026, no pet.) (citing *Reese v. Duncan*, 80 S.W.3d 650, 653 n.2 (Tex. App.—Dallas 2002, pet. denied) ("An overvote is a vote in which the voter voted for both candidates. An undervote is a vote in which the voter did not vote for either candidate.")).

In this regard, Vela's contention is without merit as "[a] trial court is within its discretion when it refuses a requested finding which has no support in the record." *See Simmons v. Compania Financiera Libano, S.A.*, 830 S.W.2d 789, 793 (Tex. App.— Houston [1st Dist.] 1992, writ denied) (citing *Allred v. Harris Cty. Child Welfare Unit*, 615 S.W.2d 803, 807 (Tex. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)). Vela's first issue is overruled.

## B.    The Sernas' Residence

Vela next challenges the trial court's determination that three members of the Serna family were residents of Kleberg County.[4]

Vela relies on the testimony of the Sernas to establish their residency, arguing that their testimony demonstrates the requisite action, intent, and volition to reside in Kenedy County. However, statements concerning residency are only one factor in the trial court's determination of residency for the purposes of an election contest. *See In re Peacock*, 421 S.W.3d 913, 918 (Tex. App.—Tyler 2014, orig. proceeding) (mem. op.) (noting "no

---

[4] We treat this particular conclusion of law as a finding of fact. *See Ex parte Estrada*, 573 S.W.3d 884, 891 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("We may treat findings mislabeled as conclusions of law as findings of fact." (citing *Ray v. Farmers' State Bank of Hart*, 576 S.W.2d 607, 608 n.1 (Tex. 1979))).

one factor is dispositive on the question of one's intended residence"); *McDuffee v. Miller*, 327 S.W.3d 808, 821 (Tex. App.—Beaumont 2010, no pet.) (providing "a voter's statement about where the voter intends to reside is not the only evidence probative on the issue of the voter's domicile").

The testimony and evidence produced at trial established that Felicita was originally from Riviera but that she had resided at the three-bedroom, 840 square-foot ranch house, owned by Bass, for forty-two years and that she lived there with Felix and Della. However, the Sernas did not own, rent, or lease the ranch house. Felicita also indicated that everything she owned was located at the ranch house. Documents introduced into evidence and considered by the trial court additionally established that Felicita worked as a teacher for RISD for thirty-eight years and none of the documents related to her RISD employment designated a Kenedy County address. The Sernas also owned an eleven-acre property, in Riviera, including a 2,000 square-foot home with cattle on that property. In addition, Felix and Felicita indicated they paid property taxes to Kleberg County and Riviera as well as a mortgage on the Riviera property. The evidence further established that Felicita's vehicle was registered in Riviera and that her Facebook page indicated she resided in Riviera. Similarly, the testimony and evidence established that Felix had worked for La Paloma Ranch for forty-three years and that he considered the ranch house his residence. Felix also confirmed he owned the eleven-acre Riviera property with Felicita and stated they had never lived apart from one another. The evidence before the trial court also established that Della worked at La Paloma Ranch, resided with her parents for most of her life, and lived at the ranch house with them. Della also testified that the ranch house had an office for her and Felix. Furthermore, Della

20

owned the eleven-acre Riviera property with her parents, they had cattle on the property, and they only visited the home located on the Riviera property on the weekends. However, the trial court was not required to credit any of the Sernas' testimony in Vela's favor. *See In re A.B.*, 437 S.W.3d at 503.

We must determine whether under the evidence presented, viewed in a light most favorable to the judgment, the trial court could have reasonably formed a firm belief or conviction that the Sernas were not residents of Kenedy County. *See Medlin*, 705 S.W.3d at 292. Based on the previously discussed testimony and evidence before the trial court, we conclude the trial court could have reasonably determined that all three members of the Serna family were not residents of Kenedy County. *See* TEX. ELEC. CODE § 11.001(a)(2). Consequently, the trial court's findings that the Sernas resided in Kleberg County are supported by legally and factually sufficient evidence. *See Pena*, 442 S.W.3d 261; *Gonzalez*, 717 S.W.3d at 527. Therefore, we hold that the trial court did not err in concluding that their respective votes should not have been counted. *See* TEX. ELEC. CODE § 221.003(b). We overrule Vela's second issue.

## C.   Declaration of Winner

Here, the trial court's judgment declared Castillo as the true winner of the election at issue. The Texas Election Code provides that the trial court shall declare the outcome of an election by subtracting the illegal votes from the official total for the candidate "[i]f the tribunal hearing an election contest can ascertain the candidate or side of a measure for which an illegal vote was cast." TEX. ELEC. CODE §§ 221.011(a), .012(a); *see Medlin*, 705 S.W.3d at 280. Here, because the margin of victory between Vela and Castillo was three votes, the trial court was only required to find four illegal votes for Vela in order to

21

properly declare a true winner since that number was greater than the number of votes necessary to change the outcome of the election. *See* TEX. ELEC. CODE §§ 221.011(a), .012(a). We have upheld the trial court's legal conclusions that Felicita's, Felix's, and Della's respective votes for Vela should not have been counted, which support the trial court's judgment. *See id* § 221.003(b). In addition, the trial court concluded that Urbina's vote for Vela was disqualified based on improper voter assistance and Vela does not challenge the court's findings and conclusions concerning her vote. Thus, we conclude the trial court did not abuse its discretion in declaring Castillo the winner of the election. *See id.* § 221.012(a); *BMC Software Belg., N.V.*, 83 S.W.3d at 794; *Rodriguez*, 679 S.W.3d at 903.[5]

## IV. CONCLUSION

We affirm the trial court's judgment.[6]

CLARISSA SILVA
Justice

Delivered and filed on the
31st day of July, 2026.

---

[5] Because we have overruled Vela's first and second issues and determined the trial did not abuse its discretion, we decline to address Vela's third issue concerning Davis's vote as it is unnecessary to a final disposition of the case. *See* TEX. R. APP. P. 47.1. ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

[6] As we held in *Trevino v. Segovia*, we conclude that the trial court's findings of fact in this case "shed light on the events that transpired at trial, which are extremely troubling to the sanctity of our electoral process and undermine the purity of the ballot." 706 S.W.3d 399, 403 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.); *see also White v. Lozano*, 719 S.W.3d 407, 410–11 (Tex. App.—Corpus Christi–Edinburg 2025, no pet.) (affirming trial court's judgment that illegal votes were cast); *Miller*, 2026 WL 1552127, at *12 (same). "As this Court stated, '[e]lection fraud perverts democracy and constitutes a grave offense, not only against the opposing candidate but against society as a whole.'" *Trevino*, 706 S.W.3d at 403 (quoting *O'Cana v. Salinas*, No. 13-18-00563-CV, 2019 WL 1414021, at *11 (Tex. App.—Corpus Christi–Edinburg Mar. 29, 2019, pet. denied) (mem. op.)). However, "we are mindful of our solemn duty to preserve and protect the integrity of the election process." *Id.* (quoting *O'Cana*, 2019 WL 1414021, at *11).